**JOHN DRIGGS CORPORATION and Reliance Insurance Company, Petitioners,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**No. 92–AA–214.**

District of Columbia Court of Appeals.

Argued Sept. 9, 1993.

Decided Nov. 4, 1993.

Donald P. Maiberger, Washington, DC, for petitioners.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.[1]

Before ROGERS, Chief Judge, STEADMAN and KING, Associate Judges.

ROGERS, Chief Judge:

Petitioners, John Driggs Corporation and Reliance Insurance Company, appeal the decision of the Director of the District of Columbia Department of Employment Services denying their claim under the District of Columbia Workers' Compensation Act for reimbursement from the special fund pursuant to D.C.Code § 36–308(6) (1993 Repl.). The trustee of the special fund responds that petitioners were properly denied relief but for the wrong reason, which, the trustee suggests, should be addressed by the agency on remand. Accordingly, because we agree that the rationale of the Director's decision appears to be inconsistent with the statute, but that there appears to be an alternative ground available to the agency, we reverse and remand the case to the agency.

## I.

While working as an engineer for John Driggs Corporation (Driggs), William Kerns injured his lower back in February 1986 when he slipped off a front-end loader that he was operating. Although Driggs and its insurance carrier, Reliance Insurance Company (Reliance), disputed liability, the agency awarded Kerns permanent partial disability benefits. A hearing examiner (Roebuck) found that Mr. Kerns suffered from spondylosis and spondylolisthesis,[2] which pre-existed the February 1986 work-related fall for which he sought compensation. The hearing examiner also found that the pre-existing condition and the accident had combined to render Mr. Kerns unable to return to his usual type of employment.

Thereafter, petitioners sought reimbursement from the special fund for compensation paid to Mr. Kerns in excess of 104 weeks under the theory that the work-related injury had combined with Kerns' pre-existing back condition to cause a substantially greater impairment. The Office of Workers' Compensation (OWC) denied their claim on the ground that they had not demonstrated that the pre-existing disability or impairment had been "manifest."[3] Petitioners requested a hearing, which was held on February 13, 1989, before a second hearing examiner (Tibbs). Although no witnesses were called, Driggs and Reliance submitted reports of medical examinations occurring after the 1986 accident and the deposition of their expert, Dr. Ramon Jenkins. Dr. Jenkins opined that Mr. Kerns had spondylosis since "early childhood" and a "mild degree of spon-

1. The Office of the Corporation Counsel filed a brief on behalf of the trustee of the special fund. *See* D.C.Code § 36–340 (1993 Repl.); 7 D.C.M.R. § 231.1 (1988). A separate brief was not submitted on behalf of the Department.

2. Spondylosis is a disintegration of the spine, and spondylolisthesis is a slipping forward of the lower lumbar vertebrae. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1609 (15th ed. 1985).

3. The OWC officer relied on the fact that a July 18, 1986 report by a Dr. McConnell stated that Mr. Kerns had sustained prior back pain follow-

ing a work injury in 1957. Because the insurance carrier (Reliance) had not provided evidence of this prior episode of back pain, the OWC officer denied the request for reimbursement from the special fund. The OWC officer seemed to reason that because Kerns' spondylosis condition was apparently latent until the 1986 injury, the only way that impairment could have been "manifest" to petitioners is if they had some record of the 1957 injury. The OWC officer stated that "[g]iven that the claimant had an episode of back pain after a work injury in 1957, this Office considers such records critical in order for Section 36–308(d) to be applicable."

dylolisthesis" for many years, but that this condition had been asymptomatic prior to the 1986 fall he sustained at work. According to Dr. Jenkins, if Mr. Kerns "hadn't fallen from the front loader and had his back examined radiographically we would never had known" that he suffered from this condition. Dr. Jenkins testified that Mr. Kerns suffered a twenty percent permanent partial disability, of which fifteen percent was attributable to his previous condition and five percent to the work-related injury.

The second hearing examiner (Tibbs) also denied petitioners' claim for reimbursement under the special fund, but on the ground that although there had been a pre-existing impairment, that impairment had not combined with the work injury to create a substantially greater disability.[4] Basing this conclusion on Dr. Jenkins' testimony that only five percent of Kerns' twenty percent permanent partial disability was due to the work-related accident, the hearing examiner ruled that this was insufficient to constitute a "substantially greater disability." Petitioners appealed to the Director of the agency, who affirmed. The Director noted that "[t]he statutory language recorded in § 36–308(d) [codified as § 36–308(6)] of the Act provides for Special Fund relief where the second injury is a catalyst for producing a substantially greater disability," but "adopted and affirmed" the hearing examiner's decisions "in all respects," agreeing that "[a] 5% increase in overall disability is not considered a substantially greater disability."

## II.

On appeal, petitioners contend that the decision of the Director, based on the hearing examiner's findings and conclusions, was irrational and contrary to applicable law. Specifically, they contend that the language and legislative history of § 36–308(6) demonstrate that Mr. Kerns' pre-existing impairment and the work injury combined to cause

4. The hearing examiner stated that the only issue before her was "whether the pre-existing condition combined with the work injury could cause a greater disability."

5. The Director stated in her order that:

a substantially greater disability warranting special fund relief for any compensation petitioners paid Kerns beyond 104 weeks. The trustee of the special fund responds that the agency reached the proper result in denying special fund relief, but maintains that it did so for the wrong reason. Essentially, the trustee asks the court to read into § 36–308(6) the requirement that a pre-existing condition be "manifest" to the employer at the time the employee is hired or at least at some point prior to the compensable injury in order to be eligible for reimbursement from the special fund.

## A.

First, we conclude that the rationale of the Director's decision to deny special fund relief appears to be contrary to the statutory language and the underlying purpose of the statute. *See Red Star Exp. v. District of Columbia Dept. of Emp. Serv.*, 606 A.2d 161, 163 (D.C.1992) (standard of review). Section 36–308(6) provides that an employer may recover for compensation payments in excess of 104 weeks of permanent partial or permanent total disability arising out of a second injury to a worker when that injury "combined with a previous occupational or nonoccupational disability or physical impairment causes substantially greater disability or death...." Both the Director and hearing examiner Tibbs gave considerable weight to Dr. Jenkins' expert testimony that only five percent of Mr. Kerns' twenty percent permanent partial disability was due to the work-related accident.[5] They concluded, in essence, that Mr. Kerns' pre-existing condition made too great a contribution (seventy-five percent) to his permanent disability rating, while the contribution of the work-related injury (twenty-five percent) was too small to warrant special fund relief. The trustee argues that there is no basis in the statute for this ruling. The emphasis on the proportional contribution of each injury to

The statutory language recorded in Section 36–308(d) of the Act provides for Special Fund relief where the second injury is a catalyst for producing a substantially greater disability. A 5% increase in overall disability is not considered a substantially greater disability when reviewing the facts presented in this case.

the overall permanent disability appears to be misplaced since it is not supported by either the language of the statute or its underlying purpose.

The plain language of § 36–308(6) does not suggest that whether a disability is "substantially greater" is to be measured solely by the percentage traceable to the work-related injury. Section 36–308(6) provides that the *combination* of injuries must yield the "substantially greater disability."[6] It contains nothing to suggest that one of the two factors (the work injury), standing alone, must reach a certain threshold in order to render the total (the resultant disability) "substantially greater." *See* ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 59.32(g), at 10–492.482 (1993) ("[a]lthough the prior impairment need not combine with the compensable injury in any special way, it must add something to the disability before the Special Fund can become liable"). Contrary to the reasoning of the hearing examiner and the Director, the term "substantially greater disability" does not require a numerical analysis comparing the percentage of the permanent disability attributable to the work-related accident to the percentage of the total disability. The Director's conclusion that a five percent increase in disability was insufficient to entitle the employer to special fund relief appears, therefore, to be erroneous.[7]

An examination of statutes similar to § 36–308(6) supports the conclusion that the rationale of the Director's order appears to be untenable. The District's special fund was modeled on the so-called "second-injury" provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908(f) (1988),[8] which provides that the resultant disability must be "materially and substantially greater than that which would have resulted from the subsequent injury alone." 33 U.S.C. § 908(f) (1988). *See, e.g., Office of Workers' Compensation Programs v. Potomac Elec. Power Co.*, 197 U.S.App. D.C. 193, 197, 607 F.2d 1378, 1382 (1979) ("the preexisting partial disability must have contributed to the seriousness of the employee's second injury"); *Office of Workers' Compensation Programs v. Cargill*, 709 F.2d 616, 617 (9th Cir.1983) (relief available where employee sustains "an injury that would not have resulted in as great a disability" if worker had not suffered from pre-existing condition). Various state courts have likewise viewed this phrase to mean greater disability than that which would have been caused by the second injury alone. *See, e.g., Kennecott Copper Corp. v. Chavez and New*

---

**6.** D.C.Code § 36–308(6) provides:

> (A) If an employee receives an injury, which combined with a previous occupational or non-occupational disability or physical impairment causes *substantially greater disability* or death, the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability and shall be the payment of:
>   (i) All medical expenses;
>   (ii) All monetary benefits for temporary total or partial injuries; and
>   (iii) Monetary benefits for permanent total or partial injuries up to 104 weeks.
>   (B) The special fund shall reimburse the employer solely for the monetary benefits paid for permanent total or partial injuries after 104 weeks. [emphasis added]

This section was amended on March 6, 1991, to narrow the employer's reimbursement to compensation paid for permanent total and partial disability. *Cf. Red Star Exp. v. District of Columbia Dept. of Emp. Serv., supra,* 606 A.2d at 162, 163 n. 3.

**7.** The Director's exclusive reliance on the five percent figure as the basis for denial of special

fund relief gave no consideration to the fact that Mr. Kerns' pre-existing back condition was asymptomatic before the work-related accident occurred. It was the fall at work which acted as the catalyst that generated the resultant permanent partial disability. Indeed, Mr. Kerns' resultant disability is substantially greater in the sense that before the accident there was no *functional* disability, and as a result of the accident he is now twenty percent permanently, partially disabled and unable to return to his usual type of employment. *Cf. Jones v. Industrial Special Indem. Fund,* 104 Idaho 337, 659 P.2d 91, 92 (1983) (discussing pre-existing, asymptomatic condition which combined with work-related injury); *Royce v. Southwest Pipe of Idaho,* 103 Idaho 290, 647 P.2d 746, 750 (1982) (same).

**8.** *See* REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS (January 16, 1980) at 19 (stating that section 41 of the bill would establish a special fund "and is identical to the current law."); REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT (January 29, 1980) at 16. *Cf. Red Star Express v. District of Columbia Dept. of Emp. Serv.,* 606 A.2d at 162 n. 1.

*Mexico Subsequent Injury Fund,* 111 N.M. 366, 805 P.2d 633, 638 (1990) (reimbursement triggered only where worker's disability is "materially and substantially greater as a result of the combination of impairments than it would have been as a result of the later accident alone"); *Special Indem. Fund v. Scott,* 652 P.2d 278, 280 (Okla.1982) (for liability of fund to attach, claimant must have "suffered greater disability from the impairment and injury combined"); *Flor–A–Crete Indus., Inc. v. Drake,* 409 So.2d 1196, 1197 (Fla.Dist.Ct.App.1982) (pre-existing disability must combine with work-related injury to create "a greater disability than would have existed absent the accident").

■ The Director's emphasis on the five percent contribution of the work injury to the resultant disability appears inappropriate for the further reason that such an approach would undermine the purpose of the special fund provision. The purpose of § 36–308(6)—to encourage employers to hire and retain handicapped workers—is served by limiting employers' liability for disabilities which result from the combination of a pre-existing impairment and a subsequent, work-related accident. *See supra* note 8, REPORT OF THE COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS at 13; *id.,* REPORT OF THE COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT at 16; *see also Office of Workers' Comp. Programs v. Berkstresser,* 287 U.S.App.D.C. 266, 270, 921 F.2d 306, 310 (1990); *Office of Workers' Comp. Programs v. Cargill, supra,* 709 F.2d at 619. When considered in light of the legislative purpose, the Director's rationale appears counter-intuitive. If there is merit to numerical comparisons, requiring that the *pre-existing condition* be a greater factor in the resultant disability than the work injury would appear to be more consistent with the overriding purpose of § 36–308(6). The smaller the work-related injury's part in the resultant disability, the more deserving, arguably, the employer ought to be of special fund reimbursement. The statute's purpose would thus be served because employers willing to hire employees with serious pre-existing impairments would be rewarded for the risk taken. By contrast, to require that the work-related injury be significantly responsi-ble for the total disability would appear to undermine the goal of encouraging employment of handicapped workers.

Because the decision of the Director and hearing examiner appears to be inconsistent with the language and purpose of § 36–308(6), an affirmance of the Director's decision under the rationale relied upon would be extremely problematical at best. *See Cooper v. District of Columbia Dept. of Emp. Serv.,* 588 A.2d 1172, 1176 (D.C.1991). *See also Abramson Assoc., Inc. v. District of Columbia Dept. of Emp. Serv.,* 596 A.2d 549, 554 (D.C.1991) (citations omitted); *Jones v. District of Columbia Dept. of Emp. Serv.,* 519 A.2d 704, 709 (D.C.1987) (citations omitted); *Securities and Exchange Comm. v. Chenery,* 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

### B.

■ Second, we conclude that a remand is appropriate since another rationale may support the denial of special fund relief. In advocating a remand, the trustee argues that the agency has previously recognized that the employee's condition must be "manifest" to the employer as a precondition to special fund relief. However, the trustee advises that the agency has not set forth the standards for determining whether or not the employer has met its burden to show that the condition was "manifest." Upon remand the agency shall set forth the standards for any requirement that a medical condition must be manifest in order to be eligible for reimbursement from the special fund. *See Lee v. District of Columbia Dept. of Emp. Serv.,* 509 A.2d 100, 102 (D.C.1986); *Hughes v. District of Columbia Dept. of Emp. Serv.,* 498 A.2d 567, 570 (D.C.1985); *cf. Pro–Football, Inc. v. District of Columbia Dept. of Emp. Serv.,* 588 A.2d 275, 279 (D.C.1991).

Before the agency, the parties had agreed that the issues were (1) whether Mr. Kerns had a pre-existing permanent partial disability at the time of the February 19, 1986 work injury, and (2) whether the pre-existing condition or disability was manifest prior to the

work injury.[9] At the hearing, in addressing the first issue, counsel for the petitioners argued that they did not need to demonstrate that Mr. Kerns' pre-existing condition was manifest, maintaining that the agency had abandoned that requirement in its decision in *Beta Construction Co. v. Office of Workers' Comp. Programs,* H & AS No. 83–124 (October 10, 1985). Because the second hearing examiner (Tibbs) found against the employer without reaching the "manifest condition" issue, the question remains whether § 36–308(6) should be construed to require an employer to demonstrate that a pre-existing impairment was "manifest" when the worker was hired or some time prior to the work injury as a prerequisite to special fund relief. The trustee contends that the scope of § 36–308(6)'s limitation of liability is itself restricted by its underlying purpose of encouraging employers to hire previously disabled workers, and was not meant to be a windfall for employers who unknowingly hire such workers. According to the trustee, this purpose must be implemented by establishing the rule that only those pre-existing conditions that are manifest at the time of employment can serve to limit an employer's liability.

Neither the federal nor the District of Columbia statute expressly require that the pre-existing condition be manifest to the employer. As the trustee points out in its brief, however, federal courts have imposed the requirement that a pre-existing condition must be manifest to the employer as a means of implementing the purpose of the special fund. Most federal circuit courts of appeal have imposed such a requirement;[10] in 1989, the Sixth Circuit declined to impose the requirement, except to avoid fraudulent claims, in light of what it found to be a shift in Congressional emphasis from concerns about discrimination to encouragement of hiring of disabled workers.[11] *See also* LARSON, THE LAW OF WORKMEN'S COMPENSATION, *supra,* § 59.33(a) at 10–492.503, 10–493–496. To the extent that the local workers' compensation statute is modeled on the federal Longshoremen's and Harbor Workers' Act, the Council of the District of Columbia, in enacting a local law, would be deemed to have incorporated into the local law the manifest condition requirement that federal courts had imposed in interpreting the federal statute. *See Meiggs v. Associated Builders, Inc.,* 545 A.2d 631, 635 (D.C.1988) ("When a local provision is borrowed directly from a federal statute, the Council [of the District of Columbia] is presumed to have borrowed the judi-

**9.** A third issue was whether the findings by the first hearing examiner (Roebuck) in the November 25, 1987, compensation order, relating to a pre-existing condition, were binding on the Trustee of the Special Fund. At oral argument, counsel for the trustee conceded that the original determination of the existence of a pre-existing determination was binding on the trustee. *See generally Ferreira v. District of Columbia Dept. of Emp. Serv.,* 531 A.2d 651, 658 (D.C.1987) (describing agency process). Although the November 25, 1987 compensation order involved only Mr. Kerns and the employer and insurer (Driggs and Reliance), and focused on whether or not Mr. Kerns was entitled to compensation from Driggs, and Mr. Kerns only had to demonstrate that his disability arose out of his employment, hearing examiner Roebuck's determination was the basis on which Driggs paid compensation to Mr. Kerns for his injury. That Driggs and Reliance now seek reimbursement from the special fund, and Mr. Kerns is no longer a party, does not appear to present the usual circumstance in which the doctrine of *res judicata* would apply. *See, e.g., Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 473 (D.C.1983). In any event, we need not decide this issue for the further reason that petitioners conceded at oral argument that its resolu-

tion would have no effect on the outcome of the instant case.

**10.** *See, e.g., American Mut. Ins. Co. of Boston v. Jones,* 138 U.S.App.D.C. 269, 272–73, 426 F.2d 1263, 1266–67 (1970); *White v. Bath Iron Works, Corp.,* 812 F.2d 33, 35 (1st Cir.1987); *Atlantic & Gulf Stevedores, Inc. v. Office of Workers' Comp. Programs,* 542 F.2d 602, 606 (3d Cir.1976); *Lambert's Point Docks, Inc. v. Harris,* 718 F.2d 644, 648 (4th Cir.1983); *Equitable Equip. Co. v. Hardy,* 558 F.2d 1192, 1196–97 (5th Cir.1977); *Duluth, M. and I.R. Ry. Co. v. United States Dept. of Labor,* 553 F.2d 1144, 1150–51 (8th Cir.1977); *Dillingham Corp. v. Massey,* 505 F.2d 1126, 1128 (9th Cir.1974); *Jacksonville Shipyards v. Office of Workers' Comp. Programs,* 851 F.2d 1314 (11th Cir.1988).

**11.** *American Ship Bldg. Co. v. Office of Workers' Comp. Programs,* 865 F.2d 727, 732 (6th Cir. 1989) (noting shift, without concluding that reasoning of other circuits was flawed in imposing a manifest condition requirement; also, as a safeguard against fraud, court held that an employer must present objective evidence to show that condition was manifested to someone prior to injury).

cial construction thereof as well.") (quoting *Hughes v. District of Columbia Dept. of Emp. Serv., supra,* 498 A.2d at 571 n. 8). *See also Red Star Exp. v. District of Columbia Dept. of Emp. Serv., supra,* 606 A.2d at 162 n. 1. Thus, the source of the agency's requirement that a condition must be "manifest" would arise from the legislation itself. The Council could not, of course, be presumed to have intended to adopt further refinements of the manifest condition doctrine enunciated by the federal courts after the Council enacted the local act.[12] *See Meiggs v. Associated Builders, Inc., supra,* 545 A.2d at 635.

In the leading case, the United States Court of Appeals for the District of Columbia Circuit in 1970 adopted the manifest condition requirement as appropriate in view of the purpose of the federal workers' compensation statute to remove discrimination against the disabled in hiring; the discrimination would arise from a disability that manifested itself to the employer. *American Mut. Ins. Co. of Boston v. Jones, supra* note 10, 138 U.S.App.D.C. at 273, 426 F.2d at 1267. Observing that the second injury fund is not intended to be a windfall, nor to actively encourage employment of the handicapped, the court stated that "[i]ts purpose was simply to remove that aspect of discrimination against the disabled which would otherwise be encouraged by the very statute intended to protect them."[13] *Id.*

As the trustee points out, the District's statute has the same anti-discrimination purposes as the comparable provision of the federal Longshoremen's and Harbor Workers' Compensation Act. The District's statute defines "physical impairment" as a condition that is "likely to be a hindrance or obstacle to obtaining employment." *See*

D.C.Code § 36–301(17) (1993 Repl.). This takes into account the employer's subjective fears that a disabled person will be a less capable worker, will be more likely to be injured, or will be likely to suffer greater disability from an injury. *See Red Star Exp. v. District of Columbia Dept. of Emp. Serv., supra,* 606 A.2d at 163–64. The legislative history indicates that the D.C. Council included the special fund in the local statute to remove any "deterrent to the rehiring or hiring" of employees with "previous disabilities or impairments" and to return "injured employee[s] to gainful employment." *See supra* note 8. Consequently, in view of the similar purposes of the federal and local special fund, the agency appears to have concluded heretofore that evidence of a manifest condition is a precondition to the employer's eligibility for reimbursement from the special fund. For example, in *Vass and Hastings* and *Nationwide Insurance v. Office of Workers' Comp. Programs,* H & AS No. 87–546B (May 3, 1989) at 4, the hearing and appeals examiner denied special fund relief, stating in the final compensation order that "[t]here was no indication in the evidence presented that the employer[s], Vass and Hastings, were aware of the claimant's mental condition prior to hiring him." Contrary to the petitioners' argument, we do not read the final compensation order in *Beta Construction Co. v. Office of Workers' Comp. Programs, supra,* to include a rejection of the manifest condition requirement; rather the agency disposed of the case on other grounds. *See Beta Construction Co. v. Office of Workers' Comp. Programs, supra,* at 13.

Therefore, we conclude that the case should be remanded to the agency for explicit consideration of the "manifest" condition issue and the delineation of precise standards

---

**12.** *See United States Dept. of Labor v. Brandt Airflex Corp.,* 207 U.S.App.D.C. 128, 134, 645 F.2d 1053, 1058 (1981) (medical records in the possession of the employer before the injury revealed the condition).

**13.** Further, in *American Mut. Insurance, supra,* the court made clear that the distinction between latent and manifest conditions was sometimes defined without reference to the employer's actual knowledge of the employee's condition. *Amer-*

*ican Mut. Ins. Co. of Boston v. Jones, supra,* note 10, 138 U.S.App.D.C. at 273–74, 426 F.2d at 1267–68. In that case the court cited a decision which held that congenital back instability could not be a previous disability because it was an "unknown and not observable" defect. *Id.* at 273 n. 25, 426 F.2d at 1267 n. 25 (citing *Boyd–Campbell Co. v. Shea,* 254 F.Supp. 483 (S.D.Tex. 1966)).

for the determination of whether an employer has meet its burden in this regard. Thereupon, the agency shall determine whether petitioners have met their burden so defined.[14]

Accordingly, we reverse and remand the case to the agency for further proceedings.

**14.** Although the trustee claims that the evidence showed that no one, including Mr. Kerns, was aware of his condition until after his accident, it is unclear whether or not the agency would still find eligibility upon a showing, for example, of possession by the employer of medical records indicating the condition or whether the agency has classified the particular medical condition as latent or manifest. *See supra* note 3. *See Lambert's Point Docks v. Harris, supra* note 10, 718 F.2d at 648; *Maurice P. Foley Co., Inc. v. Balderson,* 186 U.S.App.D.C. 301, 304, 569 F.2d 132, 135 (1977); *Special Disability Trust Fund v. American Can Co.,* 391 So.2d 321, 321 (Fl.Ct. App.1980).