**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**No. 95–AA–1749.**

District of Columbia Court of Appeals.

Argued Sept. 9, 1997.

Decided Dec. 18, 1997.

---

Amy L. Epstein, Washington, DC, for petitioner.

Edward E. Schwab, Assistant Corporation Counsel, with whom Jo Ann Robinson, Interim Corporation Counsel at the time the brief was filed and Charles L. Reischel, Deputy Corporation Counsel, were on the brief for respondent.

Before KING, REID, and EILPERIN,[*] Associate Judges.

EILPERIN, Associate Judge:

This is a petition for review that deals with an issue endemic to workers' compensation statutes—how to deal with the problem of a worker's successive injuries, one incurred on the employer's watch, the other not. More particularly this case raises the question at what point and with what clarity must the employer become aware of the worker's pre-existing injury for the employer to limit his workers' compensation liability—must that injury be manifest at the time the employee is hired, or under a more relaxed standard, at any time prior to the work-related compensable injury. The District of Columbia's approach to the problem of successive injuries has been to adopt a statutory scheme that makes the employer ultimately liable only for the amount of disability attributable to the particular injury occurring in his employment, while a Special Fund pays the difference between that amount and the total amount to which the employee is entitled for the combined effects of his prior and present injury. In this case Washington Metropolitan Area Transit Authority ("WMATA") has filed a petition for review from an October 2, 1995, District of Columbia Department of Employment Services ("DOES") hearing examiner's decision that denied WMATA's request under D.C.Code § 36–308(6)(B) for Special Fund reimbursement ruling that "only those employers who *hire* handicapped persons" with manifestly pre-existing disabilities are eligible for that Special Fund relief. That decision became final for purposes of direct judicial review to this court when the Director of DOES did not act on WMATA's request for review within forty-five days. *See* D.C.Code § 36–322(b)(2) (1993).

Both WMATA and the Trustee of the Special Fund argue that the hearing examiner's decision is legally erroneous. The parties agree that the appropriate statutory test for Special Fund eligibility is whether the employee's pre-existing disability was manifest to the employer not just at the time of hire but at any time prior to the compensable injury. They differ as to whether on the facts of this case WMATA meets that more relaxed standard for eligibility.

For the reasons noted below we are in accord with the parties' view of the statute, and accordingly reverse and remand to DOES for further consideration applying the proper legal standard.

## FACTS

WMATA hired Gene McRae on October 13, 1980. Mr. McRae's pre-employment physical examination did not show any disabling conditions or physical impairments and he was hired as a custodial laborer. WMATA later promoted him to be a truck

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).

driver. Both positions were physically taxing.

In October 1988, Mr. McRae experienced pain and swelling in his knees while at work. He reported his pain to a supervisor but continued his usual duties and sought no medical evaluation. On February 10, 1989—the date of his work injury for compensation purposes—Mr. McRae again had pain and swelling in his knees; this time he stopped working and sought medical evaluation and treatment. He was found to suffer from severe bilateral degenerative osteoarthritis of his knees with significant medial joint narrowing. On April 16, 1990, Mr. McRae had surgery in an attempt to relieve his symptoms. He received compensation benefits from February 1989 until he returned to work in a light duty position on January 13, 1992, having been found permanently medically disqualified from returning to his usual employment as a truck driver. His workers' compensation payments were resumed on December 27, 1992, when the light duty position ended. WMATA thereafter requested Special Fund reimbursement for payments beyond the 104–week limit established by D.C.Code § 36–308(6)(B) on the ground that WMATA kept Mr. McRae employed even after Mr. McRae experienced discomfort in October 1988 that WMATA argued made manifest his disabling degenerative osteoarthritis. When the request was denied administratively, WMATA petitioned this court for review.

## ANALYSIS

Generally, under workers' compensation, there have been three approaches to the successive injury problem: first, the "full responsibility" rule, imposing liability for the entire resulting disability upon the employer; second, apportionment statutes, under which the employer pays only for the disability, standing alone, that occurred during his employment; and third, "second injury" funds, which ensure that the employee receives full disability benefits, but reimburse the employer for the difference between this sum and what he would pay under an apportionment statute. See generally 2 LARSON, WORKMEN'S COMPENSATION LAW § 59.10.

While at first glance it might appear that the apportionment rule favors the employer and full responsibility the employee, in practice the full responsibility rule proved the worse for the handicapped worker. Workers' compensation legislation long antedated laws prohibiting discrimination against the handicapped. Thus, at that earlier time, as soon as it became clear that the employer would be required to bear the full cost of successive disabilities, one incurred on his watch, the other not, employers had a strong financial incentive to discharge or not hire impaired workers who might bring upon them this kind of aggravated liability. As the leading treatise explains, 2 LARSON, WORKMEN'S COMPENSATION LAW, § 59.31(a) at 10–492–398:

> Under either rule, then, the compensation system operated unsatisfactorily in the case of previously impaired workers. Under apportionment, they received far less than their actual condition required to prevent destitution; under non-apportionment they lost their job.

The solution to this dilemma adopted by all states was second injury funds. As indicated *supra*, they provide reimbursement to limit the employer's exposure while affording the injured employee coverage for the combined effect of the successive injuries.

We recently exhaustively explored the statutory background and purpose of the "second injury" provision of the District of Columbia Workers' Compensation Act. *See John Driggs Corp. v. District of Columbia Dep't of Employment Servs.*, 632 A.2d 740 (D.C.1993). For present purposes a brief summary will suffice.

The District's statute, D.C.Code § 36–308(6)(B) (1993) was modeled on the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908(f) (1988) and places a 104–week limit on an employer's liability for permanent disability payments in the case of a worker who seriously aggravates a pre-existing physical impairment. Any employer payments made after that time are reimbursed by a Special Fund that is mainly sustained through assessments

against insurance companies and self-insured employers.[1]

■ In particular, D.C.Code § 36–308(6) (1993) provides:

(A) If an employee receives an injury, which combined with a previous occupational or nonoccupational disability or physical impairment causes substantially greater disability or death, the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability and shall be the payment of:

(i) All medical expenses;

(ii) All monetary benefits for temporary total or partial injuries; and

(iii) Monetary benefits for permanent total or partial injuries up to 104 weeks.

(B) The special fund shall reimburse the employer solely for the monetary benefits paid for permanent total or partial injuries after 104 weeks.

The purpose of this "second injury" provision is to encourage employers to hire and retain handicapped workers by limiting employers' liability for disabilities which result from the combination of a pre-existing impairment and a subsequent work related accident. *See generally Driggs, supra,* 632 A.2d at 743–44. In this way, the second injury provision of the D.C. Workers' Compensation statute provides a carrot to augment the stick of the D.C. Human Rights Act's prohibition against discrimination based on physical handicap. D.C.Code § 1–2501.

■ Workers' compensation, however, was not meant to be a windfall for employers who *unknowingly* hire impaired workers. Consequently, the federal courts have read into the Longshoremen's and Harbor Workers' Act a requirement that a pre-existing condition must be *manifest* to the employer as a means of implementing the statutory purpose. In *Driggs,* with respect to our local statute, we signaled our agreement with that interpretation,[2] and reversed[3] and remanded to the agency for explicit consideration of the "manifest" condition issue and "delineation of precise standards for the determination of whether an employer has meet [sic] its burden in this regard." *Driggs, supra,* 632 A.2d at 746–47. We have no record that the Director has completed consideration of this issue. We thus take this occasion to make explicit our holding that eligibility for Special Fund reimbursement is to be based on whether the employee's pre-existing disability was manifest to the employer at any time prior to the compensable injury.

■ In deciding whether the focal point for eligibility should be the employer's awareness of his employee's pre-existing injury at the time of hire or at any time prior to the second injury we look to the purpose of the statute. The primary purpose of D.C.Code § 36–308(6) and its federal counterpart "is to prevent and reduce employment discrimination based on the risk of disability-related injury." *Director, OWCP v. Berkstresser,* 287 U.S.App.D.C. 266, 270,

---

1. The Special Fund is sustained by fines and penalties assessed against employers and their insurers under the Act, by payments into the fund where there is no person entitled to collect benefits due for a worker's death, and by *pro rata* assessments against insurance companies and self-insured employers. *See* D.C.Code Sections 36–340 and 36–341 (1993). The *pro rata* assessments provide the bulk of the money paid out in benefits.

2. We noted:

    To the extent that the local workers' compensation statute is modeled on the federal Longshoremen's and Harbor Workers' Act, the Council of the District of Columbia, in making a local law, would be deemed to have incorporated into the local law the manifest condition requirement that the federal courts had imposed in interpreting the federal statute.

*Driggs, supra,* 632 A.2d at 745.

3. We rejected the Director's ruling that an employer's statutory eligibility turned on the percentage of disability traceable to the second injury stating:

    The plain language of § 36–308(6) does not suggest that whether a disability is "substantially greater" is to be measured solely by the percentage traceable to the work-related injury. Section 36–308(6) provides that the *combination* of injuries must yield the "substantially greater disability." It contains nothing to suggest that one of the two factors (the work injury), standing alone, must reach a certain threshold in order to render the total (the resultant disability) "substantially greater." (emphasis in original).

*Driggs, supra,* 632 A.2d at 743.

921 F.2d 306, 310 (1990).[4] Accordingly, we agree with our sister court that employer eligibility for Special Fund reimbursement should hinge on "whether the [pre-existing] condition puts the employer on notice of greatly increased liability and thus creates a risk of discrimination." *Id.*

With that statutory purpose in mind there is no rational basis for drawing a distinction for eligibility purposes as between what the employer knew at the time of hire or at some later time prior to the second injury. The sole purpose of the Special Fund is to remove the employer's incentive to discriminate against the disabled. That purpose is equally relevant to both the hiring and retention of handicapped workers. Every federal court to consider the issue is in accord with that view. As the *en banc* Ninth Circuit put it:

> If ... relief is available only when the pre-existing condition is manifest at the time of hiring, the employer will feel free to hire workers with existing handicaps, but not to retain workers who become handicapped during their tenure on the job. Congress cannot have intended such a perverse result.

*Director, OWCP v. Cargill, Inc.,* 709 F.2d 616, 619 (9th Cir.1983) (en banc). The *en banc* court noted that its decision "places us in accord with every other circuit that has addressed the question." *Id.* See also *C & P Telephone Co. v. Director, OWCP,* 184 U.S.App.D.C. 18, 27 n. 8, 564 F.2d 503, 512 n. 8 (1977) ("In considering the purpose of the statute there is no rational distinction between *employing* a handicapped individual and *retaining* an existing employee who develops a handicap."); *C.G. Willis, Inc. v. Director, OWCP,* 31 F.3d 1112, 1115 n. 8 (11th Cir.1994) (collecting cases).[5]

In sum, we hold that an employer is eligible for Special Fund reimbursement of workers' compensation payments under D.C.Code

§ 36–308(6) if he establishes that the employee's pre-existing disability was manifest to the employer prior to the second injury even though that may have been after the date the employee was hired. We reverse and remand to the agency to determine whether, on the facts of this case, the employer meets that test.

*So ordered.*

---

4. We have noted *supra*, 298 that the two statutes have the same purpose.

5. While the Sixth Circuit, in accord with all other circuits, draws no distinction between employing a handicapped individual and retaining an existing employee who develops a handicap, unlike the other circuits it would give the employer the benefit of limited liability even if the pre-existing injury was not manifest to the employer so long as it was manifest to someone prior to the compensable injury. *See American Ship Building Co. v. Director, OWCP,* 865 F.2d 727 (6th Cir.1989).