**MERGENTIME PERINI, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

No. 00–AA–1380.

District of Columbia Court of Appeals.

Argued Oct. 10, 2002.

Decided Nov. 27, 2002.

Kevin J. O'Connell for petitioners.

Edward E. Schwab, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before SCHWELB, FARRELL, and REID, Associate Judges.

SCHWELB, Associate Judge:

After paying workers' compensation benefits to an employee injured on the job, Mergentime Perini and its insurer, Lumbermens Mutual Casualty Company, sought special fund relief under the District of Columbia Workers' Compensation Act, arguing that the employee's injury had combined with a previous physical impairment to cause a substantially greater disability than the employee would have suffered absent the prior impairment.

A hearing examiner of the Department of Employment Services (DOES) agreed, but denied relief because the petitioners had failed to prove that (1) the employee's prior physical impairment was manifest to the employer and (2) the employer had paid 104 weeks of disability compensation benefits to the employee. The Director of DOES affirmed on both grounds. Asserting that DOES was in error as to both issues, Mergentime Perini and Lumbermens have petitioned this court for review.

We affirm. The mere existence of medical records documenting an employee's previous disability or physical impairment, without a showing of their availability to the employer, is not sufficient to put an employer on notice of a worker's previous condition. Because we affirm the decision of the Director on this ground, we do not reach the agency's alternative ground for affirmance.

## I.

### FACTS

Adolph Notel, a local laborer, injured his left ankle on the job three times—in 1977, 1982, and 1990.

On May 2, 1977, Notel twisted and fractured his left ankle while working for Mergentime Corporation, a construction company related to, but legally distinct from, petitioner Mergentime Perini. Medical records from North Arundel Hospital document the injury.

On March 16, 1982, while still employed by Mergentime Corporation, Notel twisted and fractured his left ankle a second time. Medical records from Maryland General Hospital describe the second injury and note evidence of the first.

On January 24, 1990, Notel injured his left ankle once again. This time, however, Notel was working for petitioner Mergentime Perini, a joint venture formed between the Mergentime and Perini corporations in 1988 to build a Metro subway station at 7th and U Streets, N.W. Unlike the previous two injuries, the third injury resulted in a permanent partial disability of 22%, 60% of which was due to the 1990 injury alone, and 40% of which was due to a combination of the 1977 injury, the 1982 injury, and degenerative arthritis.

Notel applied for workers' compensation benefits, and Mergentime Perini paid him $34,940.50 in permanent partial disability benefits and $1890 for medical expenses. Because Notel's disability was caused to some extent by his pre-existing impairments, Mergentime Perini petitioned DOES for partial reimbursement under the statutory special fund for second or successive injuries. *See* D.C.Code § 32–1508(6) (2001).[1]

## II.

## SPECIAL FUND FOR SECOND OR SUCCESSIVE INJURIES

This court has previously described the function and purpose of the special fund for second or successive injuries. *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 704 A.2d 295 (D.C.1997) ("*WMATA* "); *John Driggs Corp. v. District of Columbia Dep't of Employment Servs.*, 632 A.2d 740 (D.C.1993). Only a brief review is required. This fund provides partial reimbursement to an employer when that employer pays workers' compensation benefits to an employee whose injury has "combined with a previous occupational or nonoccupational disability or physical impairment caus[ing] substantially greater disability or death." § 32–1508(6).[2] The fund came into existence on July 24, 1982, when the District of Columbia Workers' Compensation Act replaced the federal Longshoremen's and Harbor Workers' Compensation Act as the law governing workers' compensation claims in the District of Columbia.[3] *Lee v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 100, 103 (D.C.1986). The special fund provision was modeled after its federal forerunner in the Longshoremen's Act, 33 U.S.C. § 908(f), and the provisions were meant to be functionally equivalent. *Driggs, supra,* 632 A.2d at 743 & n. 8.

■ The purpose of the special fund, like that of its federal predecessor, is "to prevent and reduce employment discrimination based on the risk of disability-related [liability]." *WMATA, supra,* 704 A.2d at 298 (citing *Dir., Office of Workers' Comp. Programs v. Berkstresser,* 287 U.S.App. D.C. 266, 270, 921 F.2d 306, 310 (1990)). More precisely, the fund was established to eliminate a specific financial incentive *not* to hire or retain previously injured workers—an incentive inadvertently created by the workers' compensation statutory scheme itself. *Driggs, supra,* 632 A.2d at 746 (the purpose of the fund is "simply to remove that aspect of discrimination against the disabled which would otherwise be encouraged by the very statute intended to protect them") (citing *American Mut. Ins. Co. of Boston v. Jones,* 138 U.S.App. D.C. 269, 273, 426 F.2d 1263, 1267 (1970)); *WMATA, supra,* 704 A.2d at 299 (the "sole purpose of the Special Fund is to remove the employer's incentive to discriminate against the disabled").

The perverse incentive to engage in such discrimination arose because the basic statutory scheme of workers' compen-

---

**1.** Mergentime Perini sought special fund relief under an earlier version of the statute. *See* D.C.Code § 36–308(6) (1981 ed., 1988 repl.). The differences between the versions, however, are not relevant here. As construed, the statute has always conditioned relief on a showing that the employee's prior impairment was "manifest" to the employer, and our decision rests on that requirement alone.

**2.** The version of the special fund statute in effect at the time of Notel's third injury was, in all respects relevant to this opinion, identical. *See* D.C.Code § 36–308(6) (1981 ed., 1988 repl.).

**3.** Special fund relief is no longer available for injuries occurring on or after April 16, 1999. D.C.Code § 32–1508(6)(C).

sation requires an employer to take full responsibility for compensating an employee when that employee has been injured on the job. 5 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 90–01 (2002) (hereinafter LARSON). Under this "full responsibility" rule, a previously injured employee presents a risk of greater liability to an employer than a healthy employee does. *WMATA, supra*, 704 A.2d at 297. For example, the loss of an eye, which would ordinarily mean only partial disability for a normal worker, results in total disability for a worker who has already lost his other eye. LARSON, *supra*, § 90–01; *see Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949). Whether the employer in this example is liable for partial or total disability depends entirely on whether the injured worker has been injured before. In this way, in the absence of a special fund provision, the basic statutory scheme would create a financial incentive for employers not to hire or retain previously injured workers. *WMATA, supra*, 704 A.2d at 297.

The special fund, like the federal second injury fund, was designed to eliminate the incentive to discriminate described above. Under a basic second injury statute, an employee receives full disability benefits from the employer, but the employer is reimbursed for all benefits paid in excess of those flowing from the subsequent injury alone.[4] *Id.* A bare apportionment statute, which would also limit an employer's liability to the subsequent injury alone, would likewise eliminate the financial incentive to discriminate, but it would not ensure that the injured employee receives full disability benefits. *Id.* Second injury funds are, therefore, the preferred solution to the perverse incentive engendered by

the basic workers' compensation statutory scheme. *Id.*

In sum, the local special fund and its federal counterpart were created for the narrow purpose of eliminating this financial incentive for employers to discriminate against previously injured workers in the process of determining whether a worker should be hired or retained.

### III.

### "MANIFEST" REQUIREMENT

■ To implement this narrow purpose, the federal courts imposed a requirement not found in the text of the Longshoremen's Act. An employer seeking relief must prove that the employee's previous disability was "manifest" to the employer. *American Mut. Ins. Co. of Boston v. Jones*, 138 U.S.App. D.C. 269, 273–74, 426 F.2d 1263, 1267–68 (1970). If a previous disability is not manifest, an "employer would have … no reason to discriminate against the handicapped person," *C & P Tel. Co. v. Dir., Office of Workers' Comp. Programs*, 184 U.S.App. D.C. 18, 29 n. 10, 564 F.2d 503, 514 n. 10 (1977), and any relief to the employer would amount to a windfall, *American Mut., supra*, 138 U.S.App. D.C. at 273, 426 F.2d at 1267.

■ The "manifest" requirement of the federal statute has been incorporated into the local statute that replaced it. *Driggs, supra*, 632 A.2d at 745. Accordingly, this court has noted that eligibility for special fund relief is based "on whether the employee's pre-existing disability was manifest to the employer at any time prior to the compensable injury." *WMATA, supra*, 704 A.2d at 298. A previous disability or physical impairment is manifest to an employer when the "condition puts the

---

4. Section 32–1508(6) requires an employer to pay 104 weeks of disability benefits. The special fund reimburses an employer for all payments in excess of that amount.

employer on notice of greatly increased liability and thus creates a risk of discrimination." *Id.* at 299 (citing *Berkstresser, supra,* 287 U.S.App. D.C. at 270, 921 F.2d at 310).

On behalf of the special fund, DOES argues that an employer is "put on notice" only if it has actual knowledge of the previous condition. Mergentime Perini counters that, although actual knowledge is sufficient to satisfy the "manifest" requirement, proof of such knowledge is not necessary; according to petitioners, the mere existence of medical records, without more, is enough to put an employer on notice.

## IV.

## ANALYSIS

■ On issues of statutory construction, we defer to the agency's interpretation unless it is plainly wrong or inconsistent with the legislative intent. *Red Star Express v. District of Columbia Dep't of Employment Servs.,* 606 A.2d 161, 163 (D.C. 1992); *see* D.C.Code § 2–510 (2001). Where the statutory requirement has been judicially created, however, our review is considerably less constrained. *See Dir., Office of Workers' Comp. Programs v. Gen. Dynamics Corp.,* 980 F.2d 74, 78–79 (1st Cir.1992) (holding that an agency's interpretation of the judicially-created doctrine of manifest disability is not entitled to any special deference because an agency director has "no special expertise nor Congressional grant of authority to interpret case law").

The Director denied special fund relief because, as the hearing examiner found, "the evidence on record failed to establish that the Claimant's pre-existing disability or impairment was reported to the Employer prior to the occurrence of the current injury." We read the Director's decision as having conditioned special fund relief on whether Mergentime Perini had actual knowledge of Notel's previous physical impairments. Although the word "reported" might arguably be construed differently, no other interpretation is reasonable in light of the agency's argument on review that actual knowledge is a prerequisite to special fund relief.

### A. *Actual knowledge standard.*

We do not adopt the agency's construction. Nor, in fact, could we. In *American Mutual,* the United States Court of Appeals for the District of Columbia Circuit declined to employ an actual knowledge standard for the "manifest" requirement. 138 U.S.App. D.C. at 273–74, 426 F.2d at 1267–68. The court, in considering whether a worker's borderline mental retardation was manifest to the employer, commented on the actual knowledge standard:

Although some jurisdictions make the question turn upon the employer's actual knowledge of the employee's condition, such a test has obvious practical difficulties in application. Practice under the Longshoremen's Act has followed the more general rule, and sought to define certain classes of disability as "manifest" or "latent" *without regard to the employer's actual knowledge of the employee's condition.*

*Id.* (emphasis added); *see Driggs, supra,* 632 A.2d at 746 n.13. The court concluded that, regardless of an employer's knowledge, "some degrees of mental retardation are so severe that they cannot fairly be characterized as other than 'manifest.'" *American Mut., supra,* 138 U.S.App. D.C. at 274, 426 F.2d at 1268. The question before the court was not whether the employer had actual knowledge of the employee's mental retardation but "whether [the employee's] disability was of such [a severe] degree during the time of his employment" that it had to be considered manifest. *Id.*

The court's rejection in *American Mutual* of the actual knowledge standard is binding precedent in this jurisdiction. *American Mutual* was decided in 1970, and, under *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971), no division of this court may overrule a decision that was rendered by the United States Court of Appeals for the District of Columbia Circuit prior to February 1, 1971. When the District of Columbia incorporated the federal "manifest" requirement into the local special fund provision, the construction of that requirement in *American Mutual* became binding.

■ Accordingly, we hold that an employer is not required to have actual knowledge of an employee's previous disability or physical impairment in order to be eligible for special fund relief under the District of Columbia Workers' Compensation Act. *Cf. Dir., Office of Workers' Comp. Programs v. Brandt Airflex Corp.*, 207 U.S.App. D.C. 128, 134, 645 F.2d 1053, 1059 (D.C.Cir.1981) ("The 'manifest' injury standard does not require actual knowledge on the part of the employer."); *White v. Bath Iron Works Corp.*, 812 F.2d 33, 35 (1st Cir.1987) ("[R]egardless of the employer's actual knowledge, a condition has been considered 'manifest' if it was diagnosed and identified in medical records available to the employer."); *Atl. & Gulf Stevedores, Inc. v. Dir., Office of Worker's Comp. Programs*, 542 F.2d 602, 609 (3d Cir.1976) ("In view of the difficulty of proving actual knowledge of a disability, the ['manifest'] test is ordinarily an objective one."); *Dillingham Corp. v. Massey*, 505 F.2d 1126, 1128 (9th Cir.1974) ("[T]he key to the issue is the availability to the employer of knowledge of the pre-existing condition, not necessarily the employer's actual knowledge of it.").[5]

B. *Objective standard.*

■ Rather than adopting the "actual knowledge" standard urged on us by the Fund, we believe that an objective standard is appropriate for determining whether a worker's previous condition was manifest to an employer. *American Mut., supra,* 138 U.S.App. D.C. at 273–74, 426 F.2d at 1267–68; *see Berkstresser, supra,* 287 U.S.App. D.C. at 270, 921 F.2d at 310; *Bath Iron Works, supra,* 812 F.2d at 35; *Atl. & Gulf Stevedores, supra,* 542 F.2d at 609; *Dillingham, supra,* 505 F.2d at 1128. As noted above, a previous disability or physical impairment is manifest to an employer when the "condition puts the employer on notice of greatly increased liability and thus creates a risk of discrimination." *WMATA, supra,* 704 A.2d at 299 (citing *Berkstresser, supra,* 287 U.S.App. D.C. at 270, 921 F.2d at 310). We conclude that an employer has been "put on notice" when the employer has actual knowledge of the worker's previous condition *or* when a reasonable person in the employer's shoes would have known about that condition.

In our view, the use of an objective standard is consistent with the statute, as refined by the "manifest" requirement, and also resolves the "obvious practical difficulties" of proving what an employer actually knew. *American Mut., supra,* 138 U.S.App. D.C. at 273, 426 F.2d at 1267; *see Bath Iron Works, supra,* 812 F.2d at 36 (the objective standard "avoids disputes as to the employer's awareness of, or the actual consideration given to, a particular medical record or other evidence of an

---

**5.** Other United States Courts of Appeals have assumed without deciding that actual knowledge is not a prerequisite to eligibility for relief under the federal second injury fund. *Lambert's Point Docks, Inc. v. Harris,* 718 F.2d 644, 648 (4th Cir.1983); *Eymard & Sons Shipyard v. Smith,* 862 F.2d 1220, 1223 (5th Cir.1989); *C.G. Willis, Inc. v. Dir., Office of Workers' Comp. Programs,* 31 F.3d 1112, 1117 (11th Cir.1994).

existing disability"). It is true that, in the (presumably rare) instance when an employer does not know what a reasonable person in his shoes would know, the objective standard will produce a windfall. *See American Mut., supra,* 138 U.S.App. D.C. at 273, 426 F.2d at 1267. Consequently, if the objective standard were to be applied too loosely, it could eviscerate the "manifest" requirement. We reiterate, therefore, that the proper inquiry under the objective standard is whether a reasonable person in the employer's shoes *would* have known about a worker's previous condition, not whether a reasonable person *could* have known about that condition by some tenuous chain of circumstances.

### C. *Availability of medical records.*

■ In determining whether a reasonable person in the shoes of the employer would have known about a worker's previous disability or physical impairment, the availability of information to the employer regarding the worker's previous condition is crucial. *Dillingham, supra,* 505 F.2d at 1128 ("the critical element is what the employer has available to him ... should he decide to take notice of it"). Availability is important because the financial incentive to discriminate cannot arise unless information regarding a worker's previous condition is available to an employer.

Appropriately, courts have held that the "manifest" requirement can be satisfied by medical records documenting a worker's pre-existing disability or physical impairment if those records are available to an employer before the worker's second or successive injury. *Brandt Airflex, supra,* 207 U.S.App. D.C. at 136, 645 F.2d at 1061 ("the key is the availability of the informa-

tion or knowledge that those [medical] records reflect"); *Bath Iron Works, supra,* 812 F.2d at 35 ("a condition has been considered 'manifest' if it was diagnosed and identified in medical records available to the employer"); *Dir. Office of Workers' Comp. Programs v. Universal Terminal & Stevedoring Corp.,* 575 F.2d 452, 457 (3d Cir.1978) (condition was "readily discoverable by any employer who looked at [the employee's] medical record"); *Bunge Corp. v. Dir., Office of Workers' Comp.,* 951 F.2d 1109, 1111 (9th Cir.1991) (the "manifest" requirement is satisfied if "the condition is readily discoverable from the employee's medical record in the possession of the employer").

■ In this case, petitioners have offered no proof that the 1977 and 1982 medical records were available to the employer at any time prior to the employee's 1990 injury. Instead, Mergentime Perini and Lumbermens ask this court to hold that a medical record, simply by virtue of its existence, is available to an employer.[6]

We decline to do so. Availability, at least in the conventional sense, requires something more than mere existence. More to the point, such a broad application of the objective standard would destroy the "manifest" requirement as a limit on special fund eligibility. If a worker's medical records are held to be available to any potential or present employer merely because those records exist, windfalls could become the rule rather than the exception.

Petitioners are no doubt correct that their proposed broad construction of the "manifest" requirement would further the employment of previously disabled workers. But the special fund was not designed "to actively encourage employment

---

6. Petitioners briefly argue that Mergentime Perini also had actual knowledge of Notel's previous injuries because Notel sustained those injuries while he was working for Mergentime Corporation, one of the joint ventur-

ers in Mergentime Perini. There is no indication on the record before us, however, that petitioners presented evidence to the hearing examiner in support of this assertion.

of the handicapped." *American Mut., supra,* 138 U.S.App. D.C. at 273, 426 F.2d at 1267. Rather, the purpose of the special fund is a narrow one: to eliminate the perverse financial incentive, created by the workers' compensation scheme, to discriminate against previously injured workers in relation to their hiring and retention. *Id.*

Petitioners' reliance on *Brandt Airflex* and *Universal Terminal* is misplaced. Assuming without deciding that these cases are reconcilable with the objective standard as we have enunciated it above,[7] petitioners' argument nevertheless fails.

In *Brandt Airflex,* the court concluded that an employee's medical records were available to the employer even though, as in this case, the employer did not possess or even request to see those records. 207 U.S.App. D.C. at 137, 645 F.2d at 1062. However, the employer in *Brandt Airflex,* unlike the employer in this case, had the employee's explicit permission to review his medical records. 207 U.S.App. D.C. at 136, 645 F.2d at 1061 (the employer had "unimpeded access to [the employee's] records through [the employee's] consent"). Consequently, information regarding the employee's previous condition "would have been *immediately* discovered by [the employer] had [the employer] made an attempt to find it." *Id.* (emphasis added).

Likewise, the court in *Universal Terminal* determined that a worker's medical records were available to an employer even though that employer did not have the records in its possession. 575 F.2d at 457. In stating that the employee's previous condition was "readily discoverable by any employer who looked at [the employee's] medical record," however, the court assumed that an employer would have permission to do so. *Id.*

In this case, there is no evidence that Mergentime Perini had Notel's consent to examine his medical records or that those records were otherwise available.[8] We conclude, therefore, that Notel's previous physical impairment was not manifest and Mergentime Perini is not eligible for special fund relief.

## V.

## CONCLUSION

For purposes of the "manifest" requirement and special fund eligibility, we reject the actual knowledge standard in favor of an objective one. Under this objective standard, the existence of medical records documenting a worker's pre-existing disability or physical impairment, standing alone, and without proof of their availability to the employer, is not sufficient to put an employer on notice of the worker's pre-existing condition. Accordingly, the decision of the Director is

*Affirmed.*[9]

---

7. *Brandt Airflex* was decided by the United States Court of Appeals for the District of Columbia Circuit in 1981, before the District of Columbia Workers' Compensation Act took effect in 1982 but after the Council enacted the statute in 1980. *Lee, supra,* 509 A.2d at 103. Therefore, judicial construction of the "manifest" requirement in *Brandt Airflex* was not incorporated into the local statute. *Driggs, supra,* 632 A.2d at 746 & n. 12.

8. The need for Notel's consent under this assumed scenario should not come as a sur-

prise to petitioners. *Brandt Airflex*—the case on which petitioners primarily rely—was decided in 1981, long before the present case arose.

9. Petitioners also complain that: (1) the hearing examiner raised the "manifest" requirement *sua sponte,* and (2) case law at the time of the hearing contained no "manifest" requirement. Neither assertion is supportable. The record indicates that DOES, not the hearing examiner, raised the "manifest" require-

---

ment. Second, the proceeding before the hearing examiner took place on December 16, 1994, well after this court's 1993 decision in *Driggs, supra,* 632 A.2d at 744–47, in which

the "manifest" requirement is discussed at length. Accordingly, there is no basis for petitioners' alternative request for a remand.