**GENSTAR STONE PRODUCTS COMPANY, et al.,**
Petitioners,

v.

**District of Columbia DEPARTMENT OF EMPLOYMENT SERVICES,**
Respondent.

**No. 97–AA–1742.**

District of Columbia Court of Appeals.

Argued June 28, 2001.

Decided July 26, 2001.

Joseph F. Zauner, III, Baltimore, Maryland, for petitioners.

Edward E. Schwab, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before STEADMAN, SCHWELB, and GLICKMAN, Associate Judges.

STEADMAN, Associate Judge.

Petitioners [1] entered into a lump sum settlement agreement with an employee who suffered an on-the-job injury. The employee had a pre-existing condition which resulted in a substantially greater disability than would have been caused by the injury alone. Petitioners seek review here of a decision by the Director of the Department of Employment Services ("DOES") denying them Special Fund relief under the District of Columbia Workers' Compensation Act of 1979 ("WCA"), D.C.Code § 36–301, et seq. (1997 Repl. & March 2000 Supp.). Because the rationale for the Director's decision turns on a case whose holding she misread, we must remand the matter for further agency proceedings.

## I.

On several separate occasions during 1992, William Selby ("claimant") suffered injury to his back during the course of his employment with petitioner Genstar Stone Products Co. ("Genstar"). At the time of the initial injury, the claimant suffered from a pre-existing non-occupational permanent physical impairment-osteoporosis-which combined with the work-related injuries and resulted in a substantially greater disability than would have resulted from the injuries alone.[2] In December 1994, pursuant to § 36–308(8), the Office of Workers' Compensation approved a lump sum settlement between claimant and petitioner Genstar as compensation for claimant's disability.

The following year, petitioners sought partial reimbursement from the Special Fund. That fund, established pursuant to § 36–340, is financed mainly by assessments against employers and insurance companies and operates to remove a detriment to the hiring of workers with an existing disability. The fund reimburses employers for monetary benefits paid to such employees for permanent total or partial injuries after 104 weeks. § 36–308(6).[3] The Director rejected the petitioners' claim for Special Fund relief, which was presented as a pure matter of law.[4] *Genstar Stone Prods. Co., et al. v.*

---

1. The petitioners are the employer of the injured employee and its insurance company. The Trustee of the Special Fund was the respondent in the DOES proceedings.

2. Although no hearing was held, these facts were assumed for purposes of the DOES ruling.

3. Specifically, the subsection reads as follows: "The Special Fund shall reimburse the employer solely for the monetary benefits paid for permanent total or partial injuries after 104 weeks." § 36–308(6)(B).

4. The trustee of the fund had denied the petition for relief and a hearing examiner had rejected petitioners' challenge to that action, which by agreement was based solely on the briefs. The Director sustained the hearing examiner's rejection of the challenge.

*Trustee, Special Fund,* Dir. Dkt. No 96–88; H & AS No. 93–511A; OWC No. 242013 (Sept. 30, 1997).

The Director's legal analysis, in its entirety, was as follows:

The Director notes that in *Azzolino v. Marine Terminals Corporation,* 9 B.R.B.S. 566, BRB 77–680 (1978), the Benefits Review Board held that employers were not entitled to special fund relief after lump sum settlements with claimants. In *Washington Metropolitan Area Transit Authority v. Department of Employment Services,* 683 A.2d 470 (D.C.1996), the District of Columbia Court of Appeals cited *Benefits Communication Corp. v. Klieforth,* 642 A.2d 1299, 1304 (D.C.1994) for the proposition "that with borrowed legislation such as the WCA we ordinarily look to the interpretation of the federal statute for guidance in determining the construction of our own statute." Therefore, the Director determines that the Hearing Examiner interpretation of D.C.Code § 36–308 is the correct interpretation of the statute. *See Wonder Bread v. Office of Workers' Compensation,* Dir. Dkt. 89–22; H & AS No. 88–606; OWC No. 0064196 (September 1997).

The *Wonder Bread* decision cited by the Director actually was issued subsequent to the *Genstar* decision, on October 23, 1997. *See Wonder Bread v. Office of Workers' Comp.,* Dir. Dkt. No. 89–22; H & AS No. 88–606; OWC No. 0064196 (Oct. 23, 1997). In it, the Director repeated almost verbatim the above analysis. In addition, she rejected two further arguments. First, she addressed the argument that *Azzolino* had been overruled by a subsequent case and pointed out "that even if *Azzolino* was overruled later, *Azzolino* was the law at the time the D.C. Council enacted the WCA."[5] Second, in response to the argument that § 36–340(a) cited the lump sum settlement provision (then § 36–308(f)) as a possible use of Special Fund moneys, she pointed out that this reference was clearly a codification error and that the official enrolled act contained no such reference. *See* 27 D.C.Reg. 2503 (June 13, 1980).

Plainly, then, the Director's interpretation of the statute as precluding any claim by an employer against the Special Fund after a lump-sum settlement with the employee rested ultimately on her belief that the *Azzolino* decision, decided under the somewhat comparable Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 908(f), on which the District's WCA was based, *see John Driggs Corp. v. D.C. DOES,* 632 A.2d 740, 743 (D.C.1993), had so held.

## II.

The precise question at issue here is ultimately a matter of law and this court remains "the final authority on issues of statutory construction." *WMATA v. D.C. DOES,* 683 A.2d 470, 472 (D.C. 1996) (quoting *Harris v. D.C. DOES,* 660 A.2d 404, 407 (D.C.1995)). However, it is a firmly established rule in this jurisdiction that "an agency's interpretation of its own regulations or of the statute which it administers is generally entitled to great deference from this court." *King v. D.C. DOES,* 742 A.2d 460, 466 (D.C.1999) (citation omitted). To this end, "[o]rdinarily, therefore, this court will not attempt to interpret the agency's statute until the agency itself has done so. . . . Instead, we will remand to permit the agency to en-

---

**5.** The Director cited *McReady v. Dept. of Consumer & Regulatory Affairs,* 618 A.2d 609, 615 (D.C.1992).

gage in the necessary analysis of the legislation it is charged with carrying out." *Id.*

■ However, the degree of deference to be accorded to such agency interpretation is a function of the process by which that interpretative ruling has been arrived at and the degree to which the agency's administrative experience and expertise have contributed to the process.[6] For example, "[w]hen it appears that the agency (or, in this case, the Director) did not conduct any analysis of the language, structure, or purpose of the statutory provision, it would be incongruous to accord substantial weight to [the] agency's determination." *Proctor v. D.C. DOES,* 737 A.2d 534, 538 (D.C.1999) (citations omitted). Likewise, "if the agency's decision is based upon a material misconception of the law, this court will reject it." *Jerome Management, Inc. v. D.C. RHC,* 682 A.2d 178, 182 (D.C.1996).

In the case before us, as already indicated, the Director relied on *Azzolino v. Marine Terminals Corp.,* 9 B.R.B.S. 566, BRB 77–680 (1978), a decision by the Benefits Review Board,[7] as holding, so she thought, that an employer is precluded from relief from the Special Fund estab- lished by the LHWCA after a settlement agreement with a claimant. We are quite unable to read the holding in this manner. The question in that case was whether an *employee* who had entered into a settlement agreement with an employer could seek *additional* compensation from the Special Fund.[8] It was not until *Brady v. J. Young and Co.* (*"Brady I"*), 16 B.R.B.S. 31, OWCP No. 7–71004 (1983), that the precise issue before us, *i.e.* whether an *employer* is precluded from recovering compensation benefits from the Special Fund after a settlement, was addressed under the Act. The administrative law judge noted that *Azzolino* dealt with an employee's claim and that *"Azzolino* is equivocal on the question of Employer/Carrier's procedural capacity to seek Special Fund relief[.]" *Id.* at 33.[9] Subsequent decisions by the Benefits Review Board likewise reflected its view that *Azzolino* had not settled the issue. *See Employers Nat'l Ins. Co. v. Dir., Office of Workers' Comp. Programs,* 17 B.R.B.S. 47, 53, BRB No. 83–2840 (1985) ("The Board has never held that an *employer* may not seek post-settlement Section 8(f) relief.") (italics in original); *Brady v. J. Young and Co.* (*"Brady II"*), 18 B.R.B.S. 167, 170 n.

---

**6.** *See generally Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *United States v. Mead Corp.,* — U.S. —, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

**7.** The Benefits Review Board is a five-member tribunal established under the LHWCA to "hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions [by the deputy commissioner] with respect to claims of employees under [the LHWCA]." 33 U.S.C. § 921(b). If a hearing was held on the disputed issue under the LHWCA, then the decision being appealed from is that of an administrative law judge, and not the deputy commissioner. §§ 919(c), (d). Appeals from the Benefits Review Board's decisions are filed in the federal court of appeals for the circuit in which the injury occurred. § 921(c).

**8.** *Azzolino* states that: "If claimant settles with employer, thereby discharging employer's liability, the derivative liability of the special fund is likewise discharged." 9 B.R.B.S. at 569. At best, this language is ambiguous as to who exactly is precluded from Special Fund relief, and, as with all opinions, should be read in context of the matter to be decided.

**9.** The administrative law judge then decided the issue in favor of the employer. The following year, Congress amended the LHWCA to overturn this ruling by expressly providing that the Special Fund would not be liable for any sums paid under a settlement agreement. 33 U.S.C. § 908(i)(4).

3, BRB No. 83–2841 (1985) ("The references to post-settlement discharge of the Special Fund in ... *Azzolino* are limited to the facts of [that case] in which employer agreed to a settlement and never pursued ... relief. Since ... relief can only be raised by employer, employer's failure to act logically discharged the fund's potential liability in [that case]."). Therefore, *Azzolino* simply did not stand for the proposition on which the Director relied. Because that is the underlying basis of her ruling, we are unable to affirm the decision before us.

 In *Proctor v. D.C. DOES, supra,* we were faced with a somewhat similar situation. There the Director had relied upon a case decided by this court but overlooked the fact that the decision had been subsequently vacated and therefore had no binding effect. Observing that the Director had simply followed the case as controlling with no independent statutory analysis or reasoning, but recognizing that "any determination of that language [in the statute] should be made, in the first instance, by the agency," we remanded the matter to the Director for further proceedings. 737 A.2d at 539 (citation omitted). In doing so, we followed our similar action taken in *Long v. D.C. DOES,* 717 A.2d 329, 331–32 (D.C.1998), where the Director "did not interpret the statute or state how it might bear on [the issues]." *See also, e.g., Coumaris v. D.C. Alcoholic Beverage Control Bd.,* 660 A.2d 896 (D.C.1995). We are constrained to do likewise here.

Accordingly, the decision of the Director is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*