Robert UPCHURCH, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

The Washington Post, Intervenor.

No. 00–AA–1289.

District of Columbia Court of Appeals.

Argued Sept. 13, 2001.
Decided Oct. 25, 2001.

Richard W. Galiher, Jr., for petitioner.

David M. Schoenfeld, Gaithersburg, MD, for intervenor.

Before RUIZ, REID and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

Petitioner, Robert Upchurch, appeals the decision of the Director of the District of Columbia Department of Employment Services to affirm the denial of disability benefits to Upchurch under the District of Columbia Workers' Compensation Act (Act). Upchurch's claim for disability compensation arose from an on-the-job work injury, which occurred while he was employed with The Washington Post (Post). Upchurch alleges that the Director erred, as a matter of law, when he concluded that because Upchurch had been terminated from his employment with the Post, there was substantial evidence for the hearing examiner to conclude that he had no compensable wage loss due to his work injury. Upchurch also contends that the hearing examiner erred, as matter of law, in concluding that there was no medical evidence that Upchurch had been disabled due to his injury without considering the deposition testimony to the contrary of one of Upchurch's treating physicians. We remand the case to the agency for consideration of the entire record and to determine the basis for the Director's decision affirming the denial of the petitioner's claim for disability compensation.

## FACTUAL SUMMARY

On January 26, 1998, Upchurch slipped and fell while pushing some papers into a press at the Post. At that time, he worked "on-call" during the evening shift. Upchurch promptly reported to the Post's health center and advised the nurse on duty that he had slipped on some grease on the floor of his work area and had hurt his left lower back and hip. The nurse referred him to the Washington Hospital Center. After being seen at the Washington Hospital Center's emergency room, Upchurch was released to return to work on the following day, but, with the exception of a shift on January 31, 1998, did not attempt to do so.

Following Upchurch's fall, there were numerous efforts by the Washington Post Health Center to contact the petitioner regarding his work status.[1] During these attempts, the petitioner was advised by the health center nurse that he would need a disability slip to take to a doctor and return to the health center in order to begin receiving his disability compensation. Despite this request by the health center nurse, and Upchurch's promises that he would do so, Upchurch did not seek medical attention and did not return a disability certificate until after he was terminated by the Post.[2]

On February 23, 1998, the petitioner was terminated from his position at the Post for failing to keep his supervisor apprised of his work status and failing to follow the procedures of the department.[3] The following day, he sought medical attention for his back injury from Dr. Philip Mussenden, M.D. Dr. Mussenden evaluated the petitioner, provided him with a disability slip which was returned to the Post's health center and, in March of 1998, referred him to Dr. Uchenna Nwaneri, M.D., an orthopedic surgeon. Dr. Nwaneri evaluated Upchurch on March 27, 1998, and prescribed physical therapy sessions which the petitioner attended during March and April. The petitioner, however, had recurring back pain and returned on several occasions to Dr. Nwaneri's office for further medical evaluation in 1999. In September of that year, Dr. Nwaneri indicated in a medical report that the patient had a small, cental disc herniation and placed restrictions on his physical activities. Later, in a deposition taken in October, 1999, Dr. Nwaneri stated that he felt Upchurch had been physically unable to return to work at the Post since January 26, 1998, the date of the on-the-job accident.

At a formal hearing on the issue of disability compensation before an examiner of the Department of Employment Ser-

---

1. According to the Washington Post's Health Center records, on February 10, 1998, the petitioner was contacted by telephone and reported that he was unable to work because he was taking a class. On February 11, 1998, the petitioner picked up a disability slip from the health center stating he would attempt to visit a doctor the next day, yet failed to do so. Finally, on February 13, 1998, the petitioner indicated to the health center that he was "too busy" to go to a doctor and, as the health center nurse was attempting to encourage the petitioner to call his supervisor, he abruptly hung up the phone.

2. Upchurch made no attempt to explain his behavior during this time to the hearing examiner, other than to say that he did not see a doctor before February 24, 1998, because he had not received his "health card." Nor did he deny having been told that he had to seek medical attention.

3. Despite the petitioner's argument that there were inconsistencies in the reasons given for Upchurch's termination, there was substantial evidence of record for the hearing examiner to conclude that the petitioner was terminated for "reasons not related to the work injury."

vices, the parties addressed the nature and extent of Upchurch's disability, whether Upchurch was entitled to "wage-stacking" under the Workers' Compensation Act, and whether penalties under the Act should be assessed against the Post for bad faith delay in payment of compensation. *See* D.C.Code §§ 32–1501(8), 32–1515(f) and 32–1528(b) (2001), formerly D.C.Code §§ 36–301(8), 36–315(f) and 36–328(b) (1981). At the hearing, testimony was heard from the petitioner, the petitioner's immediate supervisor at the Washington Post (Vaughan Valentine), a claims representative for the third party administrator, and petitioner's current and past employers. Numerous documents were admitted into evidence, including all pertinent physician reports, records from the Washington Post Health Center and the deposition testimonies of Dr. Mussenden and Dr. Nwaneri. The hearing examiner, after a full evidentiary hearing on the matter,[4] ultimately found that the evidence presented by Upchurch was not "sufficient to meet his burden of establishing a wage loss resulting from a work related injury," and did not establish an "entitlement to disability benefits under the Act." According to the hearing examiner, there was "no medical evidence of record" to suggest that Upchurch was not able to work at his position at the Post, noting that "Dr. Nwaneri's reports do not mention physical restrictions claimant has as a result of the work injury until his report of September 23, 1998." The examiner further explained that "any medical evidence which can be interpreted as establishing any disability is undermined by [the] claimant's continued employment as a cable installer or freight delivery person."[5]

The Director of the Department of Employment Services issued a decision affirming the hearing examiner's conclusions regarding Upchurch's disability compensation claims. As a basis for his decision, the Director noted that:

> The Hearing Examiner found, on the nature and extent of disability, that [Upchurch] had no wage loss after January 26, 1998, due to the work injury. This finding, in the Director's opinion, is supported by substantial evidence of record because [Upchurch] was fired from his job for reasons not related to the work injury.

The petitioner filed a timely petition for review of the Director's decision with this court.

## ANALYSIS

■■■ This court must affirm an agency decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Charles P. Young Co. v. District of Columbia Dep't of Employment Servs.*, 681 A.2d 451, 456–57 (D.C.1996). In a workers' compensation

---

4. The Hearing Examiner described the issues as follows:
  1. Determination of the nature and extent of claimant's wage loss if any, from January 26, 1998 through present.
  2. Whether claimant is entitled to an adjustment in his average weekly based on wage stacking under the Act.
  3. Whether claimant voluntarily limited his income.
  4. Whether claimant is entitled to penalties pursuant to D.C.Code, as amended, § 36–315.

5. Whether employer delayed payment of compensation benefits to claimant in bad faith and is liable for penalties pursuant to § 36–328 of the Act.

5. Upchurch had disputed the allegation that he continued to work as a cable installer after the January 26, 1998, accident. The hearing examiner, however, rejected the testimony which supported that contention, finding neither Upchurch nor his cable employer to be credible witnesses.

case, we defer to the determination of the Director of the Department of Employment Services, as long as the Director's decision flows rationally from the facts, and those facts are supported by substantial evidence on the record. *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472 (D.C.1996).

▮ It is well established that an agency's interpretation of its own regulations or of the statute which it administers is generally entitled to great deference from this court. *See Genstar Stone Products v. District of Columbia Dep't. of Employment Servs.*, 777 A.2d 270, 272 (D.C. 2001). However, where the precise question at issue is ultimately a matter of law, this court remains "the final authority on issues of statutory construction." *Id.* (quoting *Washington Metro. Area Transit Auth.*, 683 A.2d at 472).

▮ In the present case, the primary contentions of the petitioner rest on questions of law. First, Upchurch argues that the Director relied on an incorrect legal standard by affirming the hearing examiner's finding of no compensable wage loss "because [Upchurch] was fired from his job for reasons not related to the work injury." If read as urged by the petitioner, the Director's decision would clearly rest on a misstatement of the law. This court can find no authority, from any jurisdiction or legal treatise, which would support the proposition that termination severs the causal link between injury and wage loss. To the contrary, according to one of the leading authorities on workers' compensation law, the "[m]isconduct of the employee, whether negligent or wilful, is immaterial in compensation law, unless it takes the form of deviation from the course of employment, or unless it is of a kind specifically made a defense in the jurisdictions containing such a defense in

their statutes." 2 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 32.00 (2001). If the Director did indeed consider the termination of the petitioner as a basis in law for denying benefits, such a determination would not withstand judicial scrutiny as it would find no support in the District of Columbia Workers' Compensation Act. *See* D.C.Code § 32–1501, *et seq.* (2001). Specifically, the Act does not provide that the subsequent termination of an employee, whether related or unrelated to a work injury, is a defense for an employer who denies an obligation to pay disability compensation. *See id.* Rather, the Act creates a presumption that an employee's injury is compensable upon a showing by substantial evidence of a disability and a work-related event which had the potential to cause such a disability. *See Gary v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1205 (D.C.1998); *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651 (D.C.1987).

▮ The Post does not contend that the law is otherwise, but argues for a different interpretation of the language in the Director's decision. Under this interpretation, the Director did not consider Upchurch's termination as a basis in law for denying him disability benefits, but rather the Director agreed with the hearing examiner that the petitioner had no wage loss directly resulting from the work injury which would entitle him to disability, and was simply further describing that petitioner had been fired from his job. This interpretation would render the decision legally valid, if supported by substantial evidence. Disability is an economic and not a medical concept, and any injury that does not result in loss of wage-earning capacity cannot be the foundation for a finding of disability. *See Washington Post v. District of Columbia Dep't of Employment Servs.*, 675 A.2d 37, 40–41 (D.C.1996).

The statutory presumption of compensability once there has been an on-the-job injury may be rebutted if an employer proves "by substantial evidence that the disability did not arise out of and in the course of employment." *See Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 744 A.2d 992, 998 (D.C.2000) (quoting *Baker v. District of Columbia Dep't. of Employment Servs.*, 611 A.2d 548, 550 (D.C.1992)). Thus, where rebuttal evidence is presented, the claimant ultimately has the burden to show by a preponderance of the evidence that his or her disability, in an economic sense, was caused by the work injury. *See id.*

■ At the hearing before the examiner, the Post presented evidence that Upchurch had continued his employment as a cable installer immediately after the on-the-job accident at the Post. The burden then shifted to the petitioner to show that there indeed was a causal link between his work-related injury and his loss of wages. The hearing examiner did not credit the petitioner's testimony, finding that there was no such connection in this case, and that the employer was not responsible for any wage loss caused by its unrelated decision to terminate Upchurch on February 23, 1998. It is possible that the Director's decision may have been intended to refer to the hearing examiner's conclusion that "any wage loss claimant has incurred since January 26, 1998, is the result of [the petitioner's] personal choices including his failure to keep employer informed of his 'on-call' status, and to attend school and not the result of a work injury." Nevertheless, the textual language of the Director's decision is ambiguous and potentially legally erroneous. One reading would render his decision reversible, as it would be based on an incorrect legal standard, and another would justify its validity.

Upchurch's second argument is that the hearing examiner, in reviewing the evidence of record, failed to consider Dr. Nwaneri's deposition testimony that the petitioner was physically unable to return to work as of the date of his accident. Had the hearing examiner given proper weight to Dr. Nwaneri's medical opinion, argues Upchurch, she could not have come to the conclusion that the petitioner had not proven an entitlement to temporary total or partial disability benefits under the Act.

■ We have stated, on more than one occasion, that a treating physician's medical opinion is preferred over that of physicians retained for litigation purposes. *See Harris v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 297, 302 (D.C.2000); *Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1211–12 (D.C.1999). Though a hearing examiner may reject the testimony of a treating physician, the hearing examiner must give reasons for doing so. *See Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 202 (D.C.2001). In this case, the hearing examiner rejected the medical reports of both treating physicians, Dr. Mussenden and Dr. Nwaneri. As to Dr. Mussenden, the examiner found his reports unreliable "inasmuch as [Upchurch] himself advised the employer that he was too busy to seek medical treatment and that he had a day job installing cable." With regard to Dr. Nwaneri, the examiner pointed out that his medical reports did not mention any physical restrictions as a result of Upchurch's work injury until September of 1998. The examiner failed to mention, however, Dr. Nwaneri's deposition testimony taken in October, 1999. In that deposition, Dr. Nwaneri stated that he was of the opinion that Upchurch could not have returned to work at that time, or at any time since the date of the work injury.

Even assuming, *arguendo,* that the examiner did consider the doctor's deposition, she failed to explain why she rejected his opinion, as explicitly mandated by the law in this jurisdiction. *See Clark,* 772 A.2d at 202.[6]

Accordingly, we remand this case for clarification of the Director's decision and consideration of the entire record by the agency, in accordance with this opinion.

*So ordered.*

---

**6.** In light of the examiner's statement that there was *"no* medical evidence of record" to support Upchurch's claim of disability, her general statement that "any medical evidence" which does is undermined by petitioner's continued employment, is insufficiently specific to explain her reasons for rejecting the treating physician's deposition testimony. (Emphasis added).