Frank ROBINSON, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Flippo Construction Company

and

Liberty Mutual Insurance Company,
Intervenors.

No. 02–AA–569.

District of Columbia Court of Appeals.

Argued March 13, 2003.
Decided May 29, 2003.

Kirk D. Williams, Washington, DC, for petitioner.

Anthony D. Dwyer for intervenors.

Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before WAGNER, Chief Judge, and FARRELL and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

Petitioner was injured on January 24, 2000, while at work for the employer-intervenor (Flippo). After a short absence, he was given suitable light-duty work at full wages. On March 22, 2000, however, Flippo discharged him for violation of its employee attendance rules. Petitioner then sought workers' compensation for the period from March 20, 2000, to October 9, 2000, when he began new employment. An Administrative Law Judge (ALJ) denied the claim on the ground that during the period for which petitioner sought compensation, he suffered no wage loss as a result of the injury but instead had "voluntarily limited his income by not abiding by [Flippo's] rules, which forced [Flippo] to terminate him." The Director of the Department of Employment Services (DOES) affirmed this ruling on appeal.[1]

■ In a workers' compensation case, "we defer to the determination of the Director of [DOES] as long as the Director's decision flows rationally from the facts, and those facts are supported by substantial evidence on the record." *Upchurch v. District of Columbia Dep't of Employment Servs.*, 783 A.2d 623, 627 (D.C.2001). The ALJ found that, although petitioner had been injured on the job, "any wage loss [he incurred] after March 20, 2000 is not due to his work injury" because "[s]uitable light duty employment within his restrictions"—and at his full wages—"was available and offered" to him by Flippo." Rather, petitioner was terminated by Flippo because of his failure to report to work on February 14, March 15, and March 21, 2000, despite written and oral warnings following the first two nonappearances. Petitioner does not take issue with the ALJ's finding that Flippo had made suitable light duty work available to him at full pay after his injury and up to the time he was discharged.

In *Upchurch, supra,* this court addressed a similar contention by an employer that the worker had been "terminated . . . for failing to keep his superior apprised of his work status and failing to follow the procedures of the department." 783 A.2d at 625. The court first explained the relevant legal framework:

> Disability is an economic and not a medical concept, and any injury that does not result in loss of wage-earning capacity cannot be the foundation for a finding of disability. The statutory presumption of compensability once there has been an on-the-job injury[, D.C.Code § 32–

1521 (2001),] may be rebutted if an employer proves by substantial evidence that the disability did not arise out of and in the course of employment. Thus, where rebuttal evidence is presented, the claimant ultimately has the burden to show by a preponderance of the evidence that his or her disability, in an economic sense, was caused by the work injury.

*Id.* at 627–28 (citations and quotation marks omitted). The court then remanded the case partly for evaluation of the employer's argument that the claimant's wage-loss during the relevant period stemmed from his "personal choices including his failure to keep employer informed of his 'on-call' status, and to attend [a class at] school." *Id.* at 628.

■ In this case, the Director applied the *Upchurch* framework correctly, and his conclusion that Flippo had rebutted the presumption of compensability and petitioner had failed to show the necessary causal connection between the injury and wage loss is supported by substantial evidence. Flippo presented evidence, which the ALJ credited, that it discharged petitioner because of his three unauthorized absences and disregard of two warnings, the second (accompanied by a suspension) informing him that another such violation would mean discharge from the employment. A supervisor for Flippo testified that this sequence—warning, suspension, discharge—reflected the company's policy of graduated discipline for such infractions.[2] Although petitioner offered an explanation for the first two absences—on March 15, for example, he had been unable to find the worksite despite instructions twice telling him how to get there[3]—he presented no explanation for his failure to report to work the third time as instructed, other than to say that he could not "remember getting suspended" and recalled only being told that he had been fired. The Director could properly find that these explanations were insufficient to meet petitioner's burden of proving that his injury, and not the disciplinary infractions, was the cause of his resulting wage-loss.

Petitioner cites no authority for his argument (Br. for Pet. at 8) that only actions by an employee approximating "gross misconduct," *see* D.C.Code § 51–110(b)(1) (2001) (standard governing discharge under *unemployment* compensation statute), suffice to sever the connection between injury and wage loss. And his related argument (Br. for Pet. at 12) that a lesser showing than deliberate or "willful" misconduct "effectively provides employers with [a] greater incentive to terminate injured employees" ignores, among other things, the employer's burden to rebut the presumption of compensability and the statutory ban against retaliatory treatment of an employee for claiming compensation. *See* D.C.Code § 32–1542. (Petitioner has made no claim of pretextual or retaliatory discharge in this case.) Given these protections, the Director reasonably concluded that Flippo could enforce its attendance policy against petitioner—an injured employee furnished suitable light-duty work—in the same way it could against any other employee.

That conclusion is in keeping with the principle stated in 4 LARSON'S WORKERS' COMPENSATION § 84.04[1], at

---

**2.** The supervisor explained that he gave the warnings to petitioner both in writing and orally.

**3.** Petitioner admitted that on this occasion he had not telephoned Flippo (specifically, John Stelma, its director in charge of light duty) after he could not find the site the second time. Stelma testified that he reached petitioner at home by telephone at 2:00–2:30 p.m. that day after learning from others that he had not shown up for his assigned flagman duties.

84–14 (2002) that, "[i]f the record shows no more than that the employee, having resumed regular employment after the injury, was fired for misconduct, with the impairment playing no role in the discharge, it will not support a finding of compensable disability." [4]  Implicit in the Director's conclusion that petitioner's noncompliance with the attendance rules was voluntary is a finding that the injury did not play a role in his failure to heed the rules and warnings.  LARSON goes on to recognize the seeming harshness in a "forfeiture of all [workers'] compensation rights" for relatively low-grade misconduct resulting in discharge (he gives the example of "a mo-

ment's fighting" by an employee);  but suggests that "[p]erhaps the only" remedy for this is "legislation comparable to those Unemployment Compensation provisions which handle discharge for misconduct and voluntary quitting by a penalty of a limited number of weeks' compensation rather than complete loss of benefits."  *Id.* at 84–15.  That, of course, is not a change that a court may effect.

*Affirmed.*

---

**4.**  By "regular employment," we assume LAR-SON would mean suitable light-duty employment as well.