*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-405

HOWARD UNIVERSITY HOSPITAL, *et al*., PETITIONERS,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

JAMES M. LYLES, JR., INTERVENOR.

Petition for Review of an
Order of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-32-20)

(Argued December 09, 2021     Decided January 27, 2022)

*William H. Schladt* for Petitioners.

*David J. Kapson* for Intervenor.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and FISHER, *Senior Judge*.

FISHER, *Senior Judge*: Petitioner Howard University Hospital appeals a Decision and Order of the Department of Employment Services ("DOES") Compensation Review Board ("CRB") which affirmed a workers' compensation schedule award to intervenor-claimant James M. Lyles. Petitioner argues that when,

as here, a workplace injury increases an employee's preexisting permanent partial disability ("PPD"), the schedule award should be apportioned so that the employer is only responsible for the amount attributable to the subsequent injury. We affirm the CRB's determination that apportionment is not available and petitioner is responsible for Mr. Lyles' full PPD schedule award.

## I. Procedural and Factual Background

Intervenor first injured his upper right arm in 2011 while working for a different employer which is not a party to this litigation. His workers' compensation claim for this first injury was settled. On April 29, 2013, while working as a radiological technician for petitioner, he sustained a second injury to the same arm and filed a workers' compensation claim for a PPD schedule award pursuant to D.C. Code § 32-1508(3)(A) and (S) (2019 Repl.). An administrative law judge ("ALJ") held a full evidentiary hearing on February 8, 2017. After a lengthy procedural history, including multiple opinions from the ALJ and the CRB, and a remand from this court in *Howard University Hospital v. District of Columbia Department of Employment Services*, 200 A.3d 1244 (D.C. 2019), the ALJ most recently concluded that intervenor had proven a total PPD of 30% to his upper right arm. Of this 30%

PPD, 20% was attributable to the 2011 injury, and 10% was attributable to the 2013 injury that intervenor incurred while working for petitioner.

The only issue remaining on appeal is how much of intervenor's total PPD schedule award must be compensated by petitioner, which depends on the effect of the 1998 Workers' Compensation Amendment Act ("WCAA") on the private sector workers' compensation system. Petitioner argues that it is only liable for the portion of the PPD award attributable to the 2013 injury. On remand from this court, the CRB issued two en banc decisions addressing this issue. Before us on appeal is the most recent en banc decision, issued on May 21, 2020, in which the CRB concluded that petitioner was responsible for the full PPD schedule award.

## II.  Analysis

"We review a decision of the CRB to determine whether the decision is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Gaines v. District of Columbia Dep't of Emp. Servs.*, 210 A.3d 767, 770 (D.C. 2019) (quoting *Reyes v. District of Columbia Dep't of Emp. Servs.*, 48 A.3d 159, 164 (D.C. 2012)). The issue before us "is ultimately a matter of law and this court remains 'the final authority on issues of statutory construction.'" *Genstar Stone*

*Prod. Co. v. District of Columbia Dep't of Emp. Servs.*, 777 A.2d 270, 272-73 (D.C. 2001) (quoting *WMATA v. District of Columbia Dep't of Emp. Servs.*, 683 A.2d 470, 472 (D.C. 1996)).  However, "[w]e defer to the CRB's reasonable interpretation of statutes that the CRB is charged with administering."  *Gaines*, 210 A.3d at 770.  Thus, we will affirm the CRB's "interpretation so long as it is not plainly wrong or inconsistent with the legislature's intent." *Red Star Express v. District of Columbia Dep't of Emp. Servs.*, 606 A.2d 161, 163 (D.C. 1992).  We further note that "[w]orkers' compensation statutes 'are remedial in character and are generally construed liberally in favor of claimants.'"  *Gaines*, 210 A.3d at 770 (quoting *Marsden v. District of Columbia*, 142 A.3d 525, 529 (D.C. 2016)).

The issue in this case concerns an employer's liability when an employee's workplace injury exacerbates a preexisting injury, thereby increasing his total PPD. There are generally three approaches to compensation for a subsequent injury:

> [F]irst, the "full-responsibility" rule, imposing liability for the entire resulting disability upon the employer; second, apportionment statutes, under which the employer pays only for the single member lost in its employment; and third, second injury funds, which ensure that the employee receives the full disability benefits but reimburses the employer for the difference between this sum and what the employer would pay under an apportionment statute.

8 Lex K. Larson & Thomas A. Robinson, Larson's Workers' Compensation Law § 90.01 (2021). Petitioner argues that the District of Columbia's workers' compensation scheme provides for apportionment, meaning that the employer would only be liable for the portion of the PPD schedule award[1] attributable to the subsequent injury.

To understand the issue of apportionment under the D.C. workers' compensation system for private employers, we first briefly review the history of the Workers' Compensation Act ("WCA") in its various iterations. The original WCA of 1979 expressly provided for apportionment:

> If an employee receives an injury which combined with a previous occupational or non-occupational disability or physical impairment causes substantially greater disability or death, the employer shall be liable for only that part of the disability or death, and the compensation due therefrom as caused by the subsequent injury . . . .

D.C. Act 3-188, § 9(f), 27 D.C. Reg. 2503, 2516 (June 13, 1980). However, under § 9(f) of the WCA, the claimant would receive supplemental compensation from a special fund "to raise the total compensation . . . to that amount which the

___

[1] Petitioner concedes that apportionment would apply only to PPD scheduled loss awards, not medical expenses or total disability benefits.

employee . . . would be entitled . . . if the subsequent injury alone had caused the subsequent amount of disability or death . . . ." *Id.*

The WCA was subsequently amended to eliminate apportionment and make the employer fully responsible for a PPD resulting from a subsequent injury that exacerbated a previous injury. Workers' Compensation Equity Amendment Act of 1990, D.C. Act 8-261, § 2(d)(3), 37 D.C. Reg. 6890, 6895 (Nov. 2, 1990). The special fund remained in place to mitigate the employer's financial burden in subsequent injury cases by reimbursing the employer for permanent total or partial disability benefits after 104 weeks. *Id.* These provisions are now codified at D.C. Code § 32-1508(6)(A)-(B).

Finally, the WCAA added language, now codified at § 32-1508(6)(C), limiting the application of this paragraph to injuries that occurred before the WCAA went into effect. D.C. Act 12-571, § 2(e)(2), 46 D.C. Reg. 891, 894 (effective Apr. 16, 1999). The full paragraph now provides:

> (A) If an employee receives an injury, which combined with a previous occupational or nonoccupational disability or physical impairment causes substantially greater disability or death, the liability of the employer shall be as

if the subsequent injury alone caused the subsequent amount of disability and shall be the payment of:

> (i) All medical expenses;
>
> (ii) All monetary benefits for temporary total or partial injuries; and
>
> (iii) Monetary benefits for permanent total or partial injuries up to 104 weeks.

(B) The special fund shall reimburse the employer solely for the monetary benefits paid for permanent total or partial injuries after 104 weeks.

(C) The requirements of this paragraph shall apply to injuries occurring prior to April 16, 1999.

D.C. Code § 32-1508(6). An initial issue in this case was whether the temporal limitation in subparagraph (C) applies to all of § 32-1508(6), or only to subparagraph (B). The CRB previously concluded that subparagraph (C) prospectively repealed only subparagraph (B), thereby discontinuing the special fund's involvement going forward but maintaining the non-apportionment language of § 32-1508(6)(A). In our previous decision in this case, we discussed "the terminology and practices of statutory drafting and codification," *Howard Univ. Hosp.*, 200 A.3d at 1249, and suggested that § 32-1508(6)(C) "could be read to have prospectively repealed all of § 32-1508 (6) . . . , including § 32-1508 (6)(A) and (B)." *Id.* at 1250. We held that the CRB's reliance on the title of the WCAA was insufficient to justify its conclusion and "remanded for the CRB to further consider the proper interpretation of [the amending language] and its implications for apportionment under the WCA." *Id.*

The CRB most recently held, and we agree, that subparagraph § 32-1508(6)(C) prospectively repealed § 32-1508(6) in its entirety. In so concluding, the CRB recited our observations about the codification of § 32-1508(6)(C). The CRB also recognized, in an earlier decision, that prospectively repealing only § 32-1508(6)(B) "would leave irreconcilable conflicts with § 32-1508(6)(A)(iii)" because many PPD schedule awards entitle a worker to compensation beyond 104 weeks. Removing only subparagraph (B) would limit a claimant's award to 104 weeks under § 32-1508(6)(A)(iii) without the special fund to make up the difference. However, this conclusion does not answer the ultimate question of how the prospective repeal of § 32-1508(6) affects apportionment. Without § 32-1508(6)(A), no statutory provision within the private sector workers' compensation arena addresses whether or not apportionment applies to subsequent injuries occurring after the WCAA took effect on April 16, 1999.

The CRB approached this statutory gap by drawing on the legislative history and the original purpose of the special fund, also referred to as the second injury fund. Modeled after the federal Longshore and Harbor Workers' Compensation Act, the special fund was intended to prevent discrimination against employees with a preexisting injury. *Mergentime Perini v. District of Columbia Dep't of Emp. Servs.*, 810 A.2d 901, 904 (D.C. 2002). It sought to achieve this objective by "eliminat[ing]

a specific financial incentive not to hire or retain previously injured workers . . . ." *Id.* (italics omitted). This incentive inadvertently "arose because the basic statutory scheme of workers' compensation requires an employer to take full responsibility for compensating an employee when that employee has been injured on the job"; thus, hiring a previously injured worker "presents a risk of greater liability to an employer than a healthy employee does." *Id.* at 904-05.

In its report on the proposed amendment, the Committee on Government Operations also noted this purpose behind the special fund. *See* D.C. Council, Committee on Government Operations, Report on Bill No. 12-192 at 2 (October 29, 1998) ("Committee Report"). It stated that the proposed bill would "eliminate[] the second injury fund for new injuries" because the special fund was intended "to promote hiring of the disabled" and "[t]he American with Disabilities Act better promotes this goal." *Id.* Thus, the CRB concluded that, rather than decreasing the employer's obligation through apportionment, "the Council intended to remove the mechanism by which an employer's financial obligation for a PPD schedule award was reduced because the reason for that mechanism no longer existed."[2]

---

[2] Petitioner unpersuasively argues that apportionment of a PPD schedule award would advance an expressed goal of the WCAA to "contain workers' compensation costs to make the District more competitive with the surrounding

The CRB emphasized that, although an employer's financial obligation and the related role of the special fund under the WCA have changed over time, the employee has always been entitled to receive the full amount of a PPD schedule award. In repealing the special fund, the Council did not give any indication that it intended to decrease the compensation to workers. The CRB reasoned that reading apportionment into the statute would run afoul of the aggravation rule, which it describes as "a fundamental workers' compensation concept" which has deep roots in our case law. *See, e.g.*, *King v. District of Columbia Dep't of Emp. Servs.*, 742 A.2d 460, 468 (D.C. 1999) ("It is well settled that 'an aggravation of a preexisting condition may constitute a compensable accidental injury under the Act.'" (quoting *Ferreira v. District of Columbia Dep't of Emp. Servs.*, 531 A.2d 651, 660 (D.C. 1987))). We have described the aggravation rule as "an obvious example of meeting the humanitarian nature of the Act" that "stems from the principle that the employer must take the employee as it finds him or her." *McCamey v. District of Columbia Dep't of Emp. Servs.*, 947 A.2d 1191, 1197 (D.C. 2008) (en banc). The leading treatise in this area explains that in general, under the aggravation rule, "the relative

---

jurisdictions as a place to do business." Committee Report at 1. However, petitioner has not pointed to anything in the legislative history connecting this general objective of the WCAA to § 32-1508(6) or the issue of apportionment. The Committee report specifies several ways the proposed legislation would achieve this cost-saving objective, and does not mention anything about apportionment or an employer's financial obligation for subsequent injuries. *Id.*

contribution of the accident and the prior disease is not weighed." 1 Larson's Workers' Compensation Law § 9.02[6]. Moreover, "[i]n the absence of an apportionment statute, the general rule is that the employer becomes liable for the entire disability resulting from a compensable accident." 8 Larson's Workers' Compensation Law § 91.01.

After a diligent search, we have not found anything in the legislative history that is contrary to the CRB's conclusion or speaks directly to the issue of apportionment after the WCAA went into effect. We agree with the CRB that departing from the principle of aggravation and lessening the total benefits the employee would receive for a PPD schedule award would be a major shift in workers' compensation law. Absent express statutory direction or some other clear indication of legislative intent to make such a significant change, the CRB's conclusion that the WCA does not provide for apportionment of a PPD schedule award was reasonable and not inconsistent with the statutory scheme.[3] This

---

[3] In holding that the WCA does not provide for apportionment, we do not mean that a claimant is entitled to double recovery. *See Safeway Stores, Inc. v. District of Columbia Dep't of Emp. Servs.*, 806 A.2d 1214, 1222 (D.C. 2002) (noting that principles of unjust enrichment can apply where "the injured employee has been otherwise compensated for the same injury"). In this case, the ALJ had previously held that petitioner was entitled to a dollar-for-dollar credit for any previous PPD payments the claimant had received. However, in the en banc decision before us on

construction is also in line with the humanitarian nature of workers' compensation. Petitioner has not pointed to anything in the statutory scheme or legislative history that convinces us to override the CRB's interpretation.

## III.    Conclusion

Accordingly, we affirm the CRB's Decision and Order holding that petitioner is liable for the full PPD schedule award without apportionment.

*So ordered.*

---

appeal, the CRB noted that this issue was not appropriately before it and amended the ALJ's compensation order to vacate the credit awarded.  Both parties agree that the issue of the dollar-for-dollar credit is not before us, and we do not express any opinion on it.